ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

EMILY R. DAHLKE (CABN 322196)
Assistant United States Attorney

      450 Golden Gate Avenue, Box 36055
      San Francisco, California 94102-3495
      Telephone: (415) 436-7124
      Fax: (415) 436-7234
      Emily.Dahlke@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) **CASE NO. 3:23-mj-70472 MAG** |
| | ) |
| Plaintiff, | ) **UNITED STATES' MOTION FOR DETENTION** |
| | ) |
| v. | ) Date:  April 25, 2023 |
| | ) Time:  10:30 a.m. |
| HENRY ALVARADO | ) Court:  Honorable Lisa J. Cisneros |
| | ) |
| Defendant. | ) |

## I.    __INTRODUCTION__

On March 7, 2023, March 8, 2023, March 15, 2023, and March 24, 2023, Henry Alvarado ("defendant") sold fentanyl and/or methamphetamine to an undercover ("UC") officer with the San Francisco Police Department ("SFPD"). In total, the defendant sold 173 grams of methamphetamine and 110 grams of fentanyl to the UC over the course of four undercover transactions. The defendant sold methamphetamine and fentanyl in the Tenderloin despite being on federal supervised release, which includes an order that he stay away from the Tenderloin neighborhood.

The defendant is on probation as result of his conviction in this district for drug sales. After entering a plea of guilty, but prior to sentencing, the defendant absconded after a series of pre-trial services violations. Several months later, he was arrested for new drug sales charges which also resulted in him being brought back to federal court for sentencing. He was sentenced on March 9, 2021 to 10 months in prison and 3 years of supervised release (Case #3:19-CR-00399-WHO).

The instant case and the defendant's prior federal conviction is not the extent of the defendant's criminal history. In fact, the defendant has a very long history of arrests for drug sales in San Francisco. He was arrested in San Francisco in 2009, 2014, twice in 2015, twice in 2018, 2020, and twice in 2022. When the defendant was selling fentanyl and methamphetamine to the UC in March of 2023, he was on pre-trial release for two drug sales cases in San Francisco Superior Court. The defendant is a danger to the community and a significant flight risk. He cannot overcome the presumption that there is no condition or combination of conditions that can secure his appearance before the Court or provide for the safety of the community. The government requests that he be detained pending trial.

## II.    __FACTUAL BACKGROUND__

### A.    __Charged Conduct__

On March 7, 2023 at approximately 3:30 pm, an SFPD UC drove to the Tenderloin and saw the defendant standing on the corner of Willow Street and Polk Street in San Francisco. The defendant sold the UC 6 grams of methamphetamine in exchange for $80 dollars. The defendant provided the UC with his phone number for future purchases. [1]

---

[1] The March 7, 2023 purchase is currently uncharged.

On March 8, 2023, the defendant and the UC arranged a second purchase of drugs. Again, the UC drove the Tenderloin, this time to the corner of Ellis and Van Ness. The defendant entered the passenger side of the UC's vehicle and sold him 57 grams of methamphetamine in exchange for $500. The transaction was video recorded.

On March 15, 2023, the defendant and the UC arranged a third purchase of drugs. The defendant agreed to sell the UC $1,000 worth of methamphetamine and fentanyl. The defendant and the UC met at the corner of Ellis Street and Van Ness. The defendant entered the UC's vehicle and handed him 57 grams of fentanyl and 58 grams of methamphetamine in exchange for $1,000. The transaction was video



recorded.

On March 24, 2023, the defendant and the UC arranged a fourth purchase of drugs. The defendant agreed to sell the UC $900 worth of fentanyl and methamphetamine. The defendant and the UC met near the corner of Ellis and Van Ness. The defendant entered the UC's vehicle and handed over 52 grams of fentanyl and 57 grams of methamphetamine. The transaction was video recorded.



On April 14, 2023, the defendant was charged in the Northern District of California by criminal complaint. He was charged with two counts of violating  of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(vi), possession with intent to distribute 40 grams or more of a mixture and substance containing fentanyl; and three counts of violating 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), possession with intent to distribute methamphetamine.

### III.      LEGAL STANDARD

Under the Bail Reform Act of 1984, the Court must detain a defendant before trial without bail where "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person in the community." 18 U.S.C. § 3142(e)(1). Detention is appropriate where a defendant is either a danger to the community or a flight risk; the government need not prove that both factors are present. *United States v. Motamedi*, 767

F.2d 1403, 1406 (9th Cir. 1985). A finding that a defendant is a danger to the community must be supported by clear and convincing evidence, but a finding that a defendant is a flight risk need only be supported by a preponderance of the evidence. *Id.*

"[T]he Bail Reform Act mandates an individualized evaluation guided by the factors articulated in [18 U.S.C.] § 3142(g)." *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019). Those factors are: (i) the nature and circumstances of the offense charged; (ii) the weight of the evidence against the defendant; (iii) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well as whether the crime was committed while the defendant was on probation or parole; and (iv) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

Where there is probable cause that a defendant has violated an offense for which a maximum of ten years in prison or more is prescribed in the Controlled Substances Act, courts apply a rebuttable presumption that no condition or combination of conditions will reasonable assure the defendant's appearance as required and the safety of the community. *See* 18 U.S.C. § 3142(e)(3)(A). Under this scheme, the burden of production shifts to the defendant. *United States v. Hir*, 517 F. 3d 1081, 1086 (9th Cir. 2008). Even if the defendant rebuts the presumption, the presumption is not erased; instead, it remains in the case as an evidentiary finding militating against release that is to be weighted along with other relevant factors. *See id.*

## IV.    ARGUMENT

### A.    The defendant faces a rebuttable presumption in favor of detention.

On March 8, 2023, March 15, 2023, and March 24, 2023, the defendant sold methamphetamine and/or fentanyl to a UC. A criminal complaint was issued on the basis of an affidavit laying out the facts of the case. On April 14, 2023, the Honorable Judge Lisa J. Cisneros signed the criminal complaint. Therefore, there is probable cause to believe the defendant committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act. As a result, there is a rebuttable presumption that no condition or combination of conditions will reasonably assure

1  the appearance of the person as required and the safety of the community. *See* 18 U.S.C. §

2  3142(e)(3)(A).

3        **B.    The defendant cannot overcome the presumption that he is a flight risk.**

4              1.    **The defendant previously absconded in this district**

5        The defendant is a substantial flight risk for several reasons. First, he has absconded in this

6  district before. The defendant was charged with drug sales in this district in 2019 (#3-19-CR-00399

7  WHO). The amount of drug he possessed in that case was less than the drugs he sold in the instant case.

8  The defendant was released under Pre-Trial Service' supervision. He entered a plea of guilty and the

9  case was set for sentencing. After the change of plea but prior to sentencing, the defendant committed a

10  series of pre-trial supervised release violations. On March 27, 2020 a warrant was issued because the

11  defendant's whereabouts were unknown. Seven months later, in November of 2020, the defendant was

12  arrested in San Francisco on new drug charges. At that time, he was brought back to federal court to face

13  sentencing.

14        The fact that the defendant previously (and recently) absconded while on pre-trial release should

15  be very troubling to this Court. When he was finally brought back to court, it was only because he was

16  arrested on new charges. As the defendant's own sentencing memorandum in that case noted, the

17  defendant's arrest, while awaiting sentencing "represents a significant breach of trust and violation of

18  the conditions of [defendants] release." (Defendant's Sentencing Memorandum p. 9.) The defendant's

19  previous conduct is indicative of what the defendant would do if he were released in this case.

20              2.    **The defendant violated Court orders when he was arrested three times for selling drugs while on federal probation**

21

22        The defendant is on active federal probation. He has been arrested three times for drug sales

23  cases in the Tenderloin while on federal probation. A term of his supervised release includes an order

24  that the defendant not be present in the area of Polk and South Van Ness, Geary, Powell and 3rd Street,

25  and Mission street.[2] On multiple occasions, the defendant sold drugs in the very neighborhood he is

26  ordered to stay away from.

27        The defendant was arrested on August 9, 2022 for selling methamphetamine to a UC on Eddy

28                [2] LINK TO WHO ORDER

Street in the Tenderloin. When police attempted to arrest the defendant, he fled. The defendant was apprehended and was charged in San Francisco Superior Court # CRI-22008559. He was released with an order to stay 150 yards away from 678 Eddy Street.

Just a few weeks later, on September 20, 2022, he was arrested near 670 Eddy Street for selling cocaine base to a UC. He was charged in San Francisco Superior Court #CRI-22010960 and was ordered to stay 150 yards away from 670 Eddy Street.

On March 7, 2023, March 8, 2023, March 15, 2023 and March 24, 2023, the defendant sold fentanyl and/or methamphetamine to a UC in the Tenderloin all while under an order from Judge Orrick to stay away from the area as a condition of probation.

This conduct demonstrates the defendants disregard court for orders. The defendant brazenly sells dangerous drugs in the Tenderloin neighborhood of San Francisco, despite being on active federal probation and being prohibited from being in the area. He flagrantly ignored court orders to stay away from the Tenderloin, despite having pending cases.

### 3.    A treatment plan will not secure the defendant's appearance

The defendant has had multiple chances and opportunities to seek treatment for any substance issues he may have. In fact, on his pending drug sales case in San Francisco (#22010960) the defendant was ordered to report to county pre-trial services for regular contact and verification of attendance at substance abuse therapy. The defendant did not provide any verification that he was attending rehab, did not report to pre-trial services as directed and on April 18, 2023, was deemed to be non-program complaint by pre-trial services. This recent conduct indicates that the defendant will not stay in contact with pre-trial services and will not attend drug rehabilitation if he is released. Instead, he will do as he has done before: disregard court orders, sell drugs, and not attend court.

### 4.    The consequences the defendant faces increase his risk of flight

The charges brought against the defendant are quite serious. He faces a significant sentence if he is convicted, including a mandatory minimum.  Additionally, the evidence against the defendant is very strong, and includes multiple video recordings of the defendant selling large quantities of fentanyl and methamphetamine to a UC. *See United States v. Gebro*, 948 F.2d 1118, 1122 (9th Cr. 1991) (strong evidence of guilt "makes it more likely that he will flee"). Additionally, the defendant is not a United

States citizen and faces possible deportation. All of these factors, when taken together, demonstrate that the defendant poses a significant flight risk.

### C.   The defendant cannot overcome the presumption that he is a danger to the community.

There is danger to the community because of defendant's consistent history of selling dangerous drugs. He has been arrested at least 9 times for drug related offenses in San Francisco. He has persisted in selling drugs in spite of pending cases, prison time, stay-away orders and rehabilitation attempts. In the instant case, during a fairly short period of time, the defendant sold over 100 grams of fentanyl and 100 grams of methamphetamine to a UC, all while on federal probation.

The GPS data from this case showed that the defendant traveled from Oakland to the Tenderloin to sell drugs on a near daily basis. He worked the "day shift" and would consistently "commute" into "work" to sell drugs. He was able to quickly procure large quantities of drugs to sell to the UC, indicating his resources and access to significant amounts of deadly drugs. Two milligrams of fentanyl is considered a lethal dose. [3] The defendant sold over 50 grams at a time to the UC. In just one of several transactions, the defendant provided the UC with enough fentanyl to kill a person 25,000 times over.

When he was arrested in the instant case, he did not have any drugs on his person. However, he told police something to the affect of "if you had waited an hour, you would have found something". The defendant poses a significant danger to the community. Based on his demonstrated behavior, he will continue to sell deadly drugs if he is released from custody.

///

///

///

///

///

///

///

///

---

[3] [3] https://www.dea.gov/resources/facts-about-fentanyl

UNITED STATES' DETENTION MEMORANDUM     8
3:23-mj-70472 MAG

1

## V.     <u>CONCLUSION</u>

2       The defendant cannot overcome the presumption that there are no set of conditions that will

3   reasonably assure the safety of the community or ensure his appearance at court proceedings. The Court

4   should order the defendant detained pending trial.

5

6   DATED:  April 24, 2023                                    Respectfully submitted,

7                                                             ISMAIL J. RAMSEY
                                                              United States Attorney
8

9                                                              _/s/ Emily R. Dahlke_____

10                                                            EMILY R. DAHLKE
                                                             Assistant United States Attorney
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28