CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

EMILY R. DAHLKE (CABN 322196)
MICHAEL G. LAGRAMA (252734)
Assistant United States Attorneys

PILAR JULIA PASCUAL[1]
Law Student

    1301 Clay Street, Suite 340S
    Oakland, California 94612
    Telephone: (510) 637-3680
    FAX: (510) 637-3724
    Emily.dahlke@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NOS. CR-19-0399-WHO |
|     Plaintiff, | CR-23-0129-WHO |
|     v. | UNITED STATES' SENTENCING MEMORANDUM |
| HENRY ALVARADO, | |
|     Defendant. | |

## I. INTRODUCTION

Over the course of four undercover transactions, Henry Alvarado ("defendant") sold 170.85 grams of methamphetamine and 105.3 grams of fentanyl to an undercover ("UC") officer with the San Francisco Police Department ("SFPD"). The defendant has an extensive arrest history associated with selling drugs in San Francisco, beginning in 2009, with nine arrests to date. Additionally, when the

---

[1] Law Student Pilar Julia Pascual provided substantial assistance with drafting the government's sentencing memorandum.

defendant was selling fentanyl and methamphetamine to the UC in March of 2023, he was on pre-trial release for two drug sale cases in San Francisco Superior Court and was on federal supervised release. The defendant's pattern of selling drugs, including fentanyl, shows that he has not been deterred by his prior arrests and convictions and sentences. The defendant's sale of lethal narcotics is a danger to the community and a significant sentence is necessary to deter him from committing future offenses. The United States respectfully recommends he be sentenced on the 23-CR-0129 case to a term of imprisonment of 60-months followed by four years of supervised release. The United States also recommends that the defendant's sentence for his probation violations run concurrently with the sentence imposed for his latest criminal offense in this case.

## II.  PROCEDURAL HISTORY

On April 17, 2023, the defendant was charged in the Northern District of California in a five-count criminal complaint. PSR ¶ 1. The defendant was charged with the following violations: (1) Possession with Intent to Distribute and Distribution of Methamphetamine – 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count 1); (2) Possession with Intent to Distribute and Distribution of 40 Grams and More of a Mixture and Substance Containing Fentanyl – 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(vi) (Count 2); (3) Possession with Intent to Distribute and Distribution of Methamphetamine – 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count 3); (4) Possession with Intent to Distribute and Distribution of 40 Grams and More of a Mixture and Substance Containing Fentanyl – 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(vi) (Count 4); and (5) Possession with Intent to Distribute and Distribution of Methamphetamine – 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count 5). PSR ¶ 1.

On April 19, 2023, the defendant was arrested pursuant to a federal arrest warrant. PSR ¶ 5. He made his initial appearance on April 20, 2023. PSR ¶ 5. On April 25, 2023, a detention hearing was held and he was ordered detained. PSR ¶ 6. On May 2, 2023, a five-count indictment was filed, charging the same violations alleged in the criminal complaint. PSR ¶ 2. On March 10, 2025, the defendant pled guilty to counts two and four of the indictment. PSR ¶ 3. He also admitted counts two and three of the Form 12. A sentencing hearing is set for June 26, 2025. PSR ¶ 3.

UNITED STATES SENTENCING MEMORANDUM
CR-23-0129-WHO
CR-19-0399-WHO

### III. FACTUAL OVERVIEW

On March 7, 2023, at approximately 3:30 pm, an SFPD UC drove to the Tenderloin and saw the defendant standing on the corner of Willow Street and Polk Street in San Francisco. The defendant sold the UC 4.577 grams of methamphetamine in exchange for $80 dollars. PSR ¶¶ 9-10. The defendant provided the UC with his phone number to arrange future sales of narcotics.

On March 8, 2023, the defendant and the UC arranged a second purchase of drugs. Again, the UC drove to the Tenderloin, this time to the corner of Ellis and Van Ness Avenue. The defendant entered the passenger side of the UC's vehicle and sold the UC 55.8 grams of methamphetamine in exchange for $500. PSR ¶¶ 11-12. The transaction was video recorded.

On March 15, 2023, the defendant and the UC arranged a third purchase of drugs. The defendant agreed to sell the UC $1,000 worth of methamphetamine and fentanyl. The defendant and the UC met at the corner of Ellis Street and Van Ness Avenue. The defendant entered the UC's vehicle and handed him 54.8 grams of fentanyl and 55.8 grams of methamphetamine in exchange for $1,000. PSR ¶¶ 13-14. The transaction was video recorded.

On March 24, 2023, the defendant and the UC arranged a fourth purchase of drugs. The defendant agreed to sell the UC $900 worth of fentanyl and methamphetamine. The defendant and the UC met near the corner of Ellis Street and Van Ness Avenue. The defendant entered the UC's vehicle and handed over 50.5 grams of fentanyl and 54.9 grams of methamphetamine. PSR ¶¶ 15-16. The transaction was video recorded.

### IV. SENTENCING GUIDELINES CALCULATION

The government has no outstanding objections to the PSR. Accordingly, the government agrees that a base offense level of 26 with a reduction of 3 points for acceptance of responsibility provides the correct final base offense level (23) calculation. PSR ¶¶ 20-31. The government also agrees that the defendant is in Criminal History Category II, which yields, with the mandatory minimum, an advisory guidelines range of 60 months to 63 months. PSR ¶¶ 78-79.

UNITED STATES SENTENCING MEMORANDUM
CR-23-0129-WHO
CR-19-0399-WHO

# V. APPLICABLE LAW

The Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The Court should begin the process of determining an appropriate sentence by calculating the correct sentencing range under the Guidelines. *Id.* After determining the appropriate Guidelines calculation, the Court should then evaluate the sentence for substantive reasonableness in light of the factors set out in Section 3553(a). *Carty*, 520 F.3d at 991–93.

Under 18 U.S.C. § 3553(a), in arriving at the appropriate sentence for the Defendant, the Court should consider these factors applicable to this case, among others:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3) the need for the sentence imposed to afford adequate deterrence to criminal conduct;

(4) the need for the sentence to protect the public from future crimes of the defendant;

(5) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(6) the need to provide restitution to any victims of the offense.

# VI. RECOMMENDED SENTENCE AND SECTION 3553(a) FACTORS

Based upon a consideration of the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553(a), the government joins probation and the defendant, and respectfully recommends a sentence of 60-months' imprisonment, followed by 4 years of supervised release and a $100 special assessment. The government submits that a 60-month sentence is appropriate under the particular circumstances and sufficient, but not greater than necessary, to achieve the goals of section 3553. Further, the government recommends that any sentence be imposed for the defendant's probation violations run concurrently with the sentence imposed in this criminal case.

//

UNITED STATES SENTENCING MEMORANDUM
CR-23-0129-WHO
CR-19-0399-WHO

### a. The Nature and Circumstances of the Offense and Characteristics of the Defendant Warrant a 60-month Sentence

In 2024, the Office of the Chief Medical Examiner reported that fentanyl was involved in 451 out of 635 accidental drug overdose deaths in San Francisco.[2] While all controlled substances carry significant risks, fentanyl is linked to over 70% of these fatal overdoses, highlighting its devastating impact on the city's drug crisis.[3] Each time the defendant sold fentanyl in the streets of San Francisco, he directly contributed to and profited from the city's drug overdose epidemic that has destroyed and claimed the lives of people. The defendant has also been arrested for selling narcotics nine times, and when the defendant was selling fentanyl and methamphetamine to the UC in this case, he was on federal supervised release for a prior drug conviction before this Court. He was also on pre-trial release in connection with two drug distribution cases pending in San Francisco Superior Court. Despite a plethora of drug sales arrests and convictions in the Bay Area, the defendant has yet to be deterred from contributing to the open drug air market and endangering the lives of many individuals in San Francisco. PSR ¶ 69.

The government recognizes the difficulty the defendant experienced in his childhood. PSR ¶¶ 56-57, 62. But the PSR also shows defendant enjoyed some benefits throughout his life. He maintained a good relationship with his mother, sister, and uncle who provided him with financial support. PSR ¶¶ 54, 58. With the support of the defendant's uncle, the defendant was able to attend Jefferson High School in Daly City. PSR ¶ 58. Although he left school prior to graduating, he began working jobs in construction, painting, and plumbing. PSR ¶ 74. Moreover, he reported his future plans include reuniting with his mother and taking care of her financially. PSR ¶ 58. Accordingly, in light of the defendant's criminal history of repeated drug dealing and personal background, a 60-month sentence is warranted.

### b. A 60-Month Sentence Would Reflect the Seriousness of the Offense, Provide Just Punishment, and Provide Adequate Deterrence

A 60-month sentence would appropriately reflect the seriousness of the offense, reinforce respect for the law, and serve both as a general deterrent to other drug traffickers and a specific deterrent to the

---

[2] https://abc7news.com/post/national-fentanyl-awareness-day-what-is-san-franciscos-strategy-tackle-crisis-400-overdoses-2024/16281158/

[3] https://www.sfchronicle.com/projects/san-francisco-drug-overdose-deaths/

UNITED STATES SENTENCING MEMORANDUM
CR-23-0129-WHO
CR-19-0399-WHO

defendant. As previously noted, trafficking fentanyl is a highly dangerous and destructive activity that significantly contributes to the epidemic of drug overdoses in San Francisco, causing immense harm to individuals, families, and the community at large. Furthermore, a 60-month sentence would provide deterrence to the defendant, who has not previously been deterred by less stringent consequences. It would also provide general deterrence to others who are already engaged in, or are considering, selling fentanyl on the streets of San Francisco. See *United States v. Barker*, 771 F.2d 1362 (9th Cir. 1985) ("General deterrence is a legitimate aim [of sentencing]."). The defendant, like other drug dealers in San Francisco, must be confronted with the reality of a significant consequence for selling dangerous drugs, such as fentanyl, which causes death and destruction. Without a clear and substantial deterrent, those who traffic in dangerous substances like fentanyl will continue to perpetuate the devastating overdose crisis in the community. A 60-month sentence is sufficient, but not greater than necessary, to achieve the sentencing factors outlined in 18 U.S.C. § 3553(a).

## VII.   CONCLUSION

For the foregoing reasons, the United States concurs with Probation and the defendant's recommendation and respectfully requests the Court impose a sentence of 60-months imprisonment followed by four years of supervised release and a $100 special assessment. The United States further recommends that the defendant's sentence for his supervised release violations be served concurrently with the recommended 60-month sentence for his criminal offense.

DATED: 6/18/2025

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

*/s/ Emily R. Dahlke*

EMILY R. DAHLKE
MICHAEL G. LAGRAMA
Assistant United States Attorney

UNITED STATES SENTENCING MEMORANDUM
CR-23-0129-WHO
CR-19-0399-WHO